# UNITED STATES DISTRICT COURT
for the
Central District of California

In the Matter of the Search of )
A large cardboard box sealed with tape and without shipping label, weighing approximately 45 pounds currently held by the FBI in Orange, California )
Described further in Attachment A )

Case No. 2:21-MJ-5657

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

   *See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

   *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Dist./Poss. w/Int. to Dist. Cont. Subs. |
| 21 U.S.C. § 843(b) | Use of Comm. Facility to Dist. Cont. Subs. |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:

   *See attached Affidavit*

   ☒ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days*: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

 

*Emily Hinson*
Applicant's signature

Emily Hinson, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

Judge's signature

City and state: Los Angeles, CA

Hon. Pedro V. Castillo, U.S. Magistrate Judge
Printed name and title

AUSA: Kevin B. Reidy, x8536

**ATTACHMENT A**

<u>PROPERTY TO BE SEARCHED</u>

The property to be searched is a large cardboard box sealed with tape and without shipping label, weighing approximately 45 pounds, with "Lee Sung Jin" written in Korean and "A E" written in English on the package, currently held by the FBI in Orange, California.





**ATTACHMENT B**

ITEMS TO BE SEIZED

The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance), namely:

    a.   Any controlled substances;

    b.   Currency, money orders, bank checks, or similar monetary instruments in quantities over $1000;

    c.   Items used to disguise controlled substances; and

    d.   Packaging materials.

**AFFIDAVIT**

I, EMILY HINSON, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent for the Federal Bureau of Investigation ("FBI"), and have been so employed since June 2021. I am currently assigned to the Los Angeles Field Office Criminal Branch, Transitional Organized Crime Squad, an enforcement group comprised of agents and officers from federal and local agencies. Before being assigned to the FBI Los Angeles Field Office, I completed approximately five months of formal training at the FBI Academy located in Quantico, Virginia. Throughout the course of my training, I received instruction on various topics, including, but not limited to, federal criminal law, various investigative techniques, money laundering techniques, surveillance, firearms training, and law enforcement tactics. Prior to becoming an FBI Special Agent, I worked for the North Carolina Department of Public Safety as both a Probation Officer and a Juvenile Court Counselor for approximately one year. In addition, I worked as a Protective Services Worker for San Diego County Child Welfare Services investigating allegations of abuse, neglect, and exploitation for approximately five-and-a-half years.

2. During both the time that I have been employed by the FBI and in previous positions, I have participated in multiple criminal investigations involving narcotics, domestic violence, gangs, child abuse, human trafficking, and commercial sexual

exploitation of children.  I have interviewed suspects, victims, and witnesses regarding the investigations in which I have been involved.  Additionally, I have also participated in many aspects of criminal investigations, including gathering and reviewing of evidence and executing search warrants.  I have also consulted with more experienced members of my squad regarding narcotics investigations, narcotics trafficking, and the sending of narcotics through the mails.

## II. PURPOSE OF AFFIDAVIT

3.  This affidavit is made in support of a search warrant for a large cardboard box sealed with tape and without shipping label, weighing approximately 45 pounds, with "Lee Sung Jin" written in Korean and "A E" written in English on the package, currently held by the FBI in Orange, California, as more fully described in Attachment A (the "SUBJECT PARCEL").

4.  The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance), as described more fully in Attachment B, which is also incorporated by reference.

5.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there

2

is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

6.   On December 13, 2021, Drug Enforcement Administration ("DEA") Special Agent Daniel Son informed FBI Special Agent Daniel Lim that Korea Customs Service ("KCS") had seized approximately nine kilograms of suspected methamphetamine at Incheon International Mail Center.  The methamphetamine was found in three separate packages, each weighing approximately three kilograms, which were sent to three different recipients from the same sender--Paul KIM ("KIM"), 8380 Vickers Street #211, San Diego, California 92111.  According to KCS officials, KIM had identified his phone number as 213-999-4642.

7.   The packages were sent to South Korea from a U.S.-based shipping company, Asia Express.  The following are the associated tracking numbers and intended addresses for the three packages: (i) tracking number 6077806013188, sent to Room 469-9, 404 in Jinan-dong, Hwaseong-si, Gyeonggi-do ("PACKAGE 1"); (ii) tracking number 6077806013189, sent to 1161-4, Seryu-dong, Gwonseon-gu, Suwon-si, Gyeonggi-do, Republic of Korea ("PACKAGE 2"); and (iii) tracking number 6077806013190, sent to Room 432-1, 103 Mangpo-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do ("PACKAGE 3" and, collectively with PACKAGE 1 and 2, the "SEIZED

3

PACKAGES")). According to KCS, the SEIZED PACKAGES were sent to Korea on December 6, 2021.

8. According to the KCS seizure reports provided to U.S. law enforcement, the substances in the SEIZED PACKAGES were field tested at the time of interception and tested positive for methamphetamine. PACKAGE ONE contained 3.1 kgs of suspected methamphetamine. PACKAGE TWO contained 2.9 kgs of suspected methamphetamine. PACKAGE THREE contained 3.2 kgs of suspected methamphetamine.

9. The tracking numbers revealed that all three SEIZED PACKAGES were originally sent from the same shipping company, Asia Express, located at 13925 Yale Avenue, Suite 190, Irvine, California 92620.

10. On December 14, 2021, FBI agents interviewed Y.K., the owner of Asia Express, about the SEIZED PACKAGES and the purported sender of the packages, KIM.

    a. Y.K. said that KIM had come to Asia Express approximately one year ago and explained that some of his associates from Los Angeles would be dropping off packages periodically at Asia Express on KIM's behalf. KIM further explained that he resided in San Diego, California. Y.K. described KIM as a Korean male in his 30s, medium height, thin build, black hair, and tattoos on his arms and neck.

    b. When asked about who sent the SEIZED PACKAGES, Y.K. stated that they were provided by a man whose name she did not know on December 6, 2021. Y.K. recognized the man from numerous occasions over the past six months when he had come to

4

Asia Express. The man had sent packages to addresses in South Korea. Y.K. described the sender of the SEIZED PACKAGES as a Korean male, 20-30 years old, medium height, thin build, black hair and with tattoos on his arms and neck.

        c. According to Y.K, the sender of the SEIZED PACKAGES only ships steel wire spool and pays with cash for all transactions. The packages usually weigh different amounts each time, which Y.K. thought was odd since it looked like the sender was shipping the same item shipped each time. The man who sent the SEIZED PACKAGES sends all the packages to South Korea on KIM's behalf and using KIM's account with Asia Express. The man has never provided his identification to Y.K.

        d. Y.K. provided FBI agents with an invoice list which included all packages shipped for KIM's account. This invoice list revealed that 167 packages have been shipped to South Korea on KIM's account between May 5, 2020, and December 13, 2021. All packages were described as containing steel wire.

        e. Y.K. also told agents that the man who sent the SEIZED PACKAGES had recently come to Asia Express on December 13, 2021, and brought one unboxed steel wire spool to ship to South Korea--the SUBJECT PARCEL. Y.K. packaged the item into a cardboard box. The SUBJECT PARCEL had not been picked up for delivery at the time of the interview. The intended delivery address for the SUBJECT PARCEL was Room 469-9, 404 in Jinan-dong, Hwaseong-si, Gyeonggi-do, in South Korea.

    11. Shortly after the interview of Y.K., law enforcement decided to conduct a dog sniff of the SUBJECT PARCEL to assess

whether narcotics were inside. FBI agents requested the assistance of a drug-sniffing dog from the Irvine Police Department. Police Officer Craig Huffmire soon arrived at Asia Express with canine "Kenny." "Kenny" sniffed the SUBJECT PARCEL and alerted to the possible presence of narcotics.

    12. "Kenny" has been a service dog for approximately eight years. "Kenny" receives annual certification and was recently certified one week ago. "Kenny" is trained to detect methamphetamine, cocaine, and heroin. Attached as Exhibit 1, and incorporated by reference, is a true and correct copy of information provided to me by Officer Huffmire regarding Kenny's training and history in detecting drugs, as well as the examination of the SUBJECT PARCEL.

    13. The identified package was seized with Y.K.'s permission and a property receipt was provided to her. The sealed package was booked into FBI evidence.

**IV. TRAINING AND EXPERIENCE DRUG TRAFFICKING THROUGH THE MAILS**

    14. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

        a. Drug traffickers attempt to conceal drugs within a variety of different items which at first glance appear not to be suspicious. Drug traffickers also use several packaging layers when shipping drugs to decrease the odor.

        b. Drug traffickers often use USPS or commercial express mail delivery companies, such as FedEx or UPS, to ship drugs and money. They do so, at least in part, because of the

6

convenience of the service, the availability of internet and phone tracking services, the speed of delivery, and to reduce their risk of arrest during the transportation of drugs from one place to another.

   c. In order to avoid detection, drug traffickers often use hand-written air bills, drop the packages near closing time, pay for such services in cash, and use fictitious names, addresses, and telephone numbers to avoid detection by law enforcement.

   d. Drug traffickers who purchase narcotics in the Los Angeles area can obtain a significant profit if they are able to transport the narcotics to a buyer in South Korea. Based on my conversations with other more experienced law enforcement officers with experience on the narcotics trade between the United States and South Korea, I believe that, for example, methamphetamine prices are eight to ten times higher in South Korea than in the Los Angeles area.

7

## V. CONCLUSION

15. For all the reasons described above, there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of the Subject Offenses, will be found in the SUBJECT PARCEL described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ___ day of
December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE